## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 8:25-cv-2113

PAINT NAIL BAR FRANCHISE COMPANY, LLC, a Florida limited liability company,

        Plaintiff,

v.

OBIENTERPRISE, LLC, a Texas limited liability company, KENNY ERIC EDDLEMAN, an individual, and ANDREA M. EDDLEMAN, an individual,

        Defendants.

### VERIFIED COMPLAINT

Plaintiff, Paint Nail Bar Franchise Company LLC, sues Defendants, ObiEnterprise, LLC, Kenny Eric Eddleman and Andrea M. Eddleman, and alleges:

### JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction pursuant to 18 U.S.C. § 1836(b)(1) as to the claims asserted under the Defend Trade Secrets Act ("DTSA").

2.    This Court has original subject matter jurisdiction as to the claims other than those based on the DTSA, under 18 U.S.C. § 1836(b)(1), because those

claims are so related to the claims brought under the DTSA that they form a part of the same case or controversy.

3.     Further, an actual justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C §§ 2201-2202.

4.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Defendants are subject to the court's jurisdiction with respect to this action in this district, and pursuant to the parties' Franchise Agreement (defined below).

## PARTIES

5.     Plaintiff, Paint Nail Bar Franchise Company LLC ("Paint Nail Bar" or "Plaintiff"), is a Florida limited liability company, having a principal place of business in Sarasota County, Florida. All members of Paint Nail Bar are residents of the State of Florida.

6.     Defendant, Kenny Eric Eddleman ("Eric"), is an individual and resident of Texas.

7.     Defendant, Andrea M. Eddleman ("Andrea" and, collectively with Eric, the "Individual Defendants"), is an individual and resident of Texas.

8.     Defendant, ObiEnterprise, LLC ("ObiEnterprise" and, with the Individual Defendants, the "Defendants"), is a Texas limited liability company

with its principal place of business in Harris County, Texas. Upon information and belief, all members of ObiEnterprise are residents of the State of Texas.

**FACTS**

**The Paint Nail Bar Franchise System**

9.      Paint Nail Bar is the franchisor of a System providing a retail business offering beautiful, hygienic nail salons where guests are welcomed with affordable luxury services, exceptional sterilization and safety standards, and impeccable customer service to the general public. Through and by virtue of a Trademark License Agreement with Mark Schlossberg, Paint Nail Bar licenses others to operate nail salons under the federally-registered trademarks "Paint Nail Bar" and "Paint Nail Bar A Luxury Nail Affair" (collectively, the "Marks").

10.     Through the expenditure of time, skill, effort, and money, Paint Nail Bar is the sole owner, and Paint Nail Bar as the sole licensor, have developed the Marks, which have been used in the development, organization, and operation of a System of nail bars offering salon services to the general public.

11.     Paint Nail Bar has entered into Franchise Agreements for the operation of Paint Nail Bars at various locations throughout the United States, pursuant to which Paint Nail Bar licenses others the right to operate Paint Nail Bars using the Marks and System.

12.     The Paint Nail Bar System consists of the manner in which the

franchisee is licensed to operate the Paint Nail Bar nail salon, the method of doing business, and certain other trade secrets and proprietary information, as designated and adopted by Paint Nail Bar.

13.     Paint Nail Bar has developed the Marks and System for use in the operation of the licensed Paint Nail Bars, which include the following principal trademarks, which have been registered by Mr. Schlossberg on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark | Registration Number | Registration Date |
|---|---|---|
| PAINT NAIL BAR | 4874455 | December 22, 2015 |
| PAINT NAIL BAR A LUXURY NAIL AFFAIR | 5320334 | October 31, 2017 |

14.     The Marks and System have been used exclusively by Paint Nail Bar, and its designated licensees, in commerce in connection with the operation of Paint Nail Bars since 2016. Since that time, Paint Nail Bar has grown to over 30 locations in over a dozen states (including Franchisee Defendants' formerly-franchised location).

15.     The Marks have become a valuable asset of substantial and inestimable worth to Paint Nail Bar. The Marks are a symbol of quality salon experience served by Paint Nail Bar. Paint Nail Bar has a vital economic interest in protecting its name and the Marks. The preservation and protection of its name and the Marks are essential the maintenance of the quality of Paint Nail Bars and

the goodwill and reputation associated with them.

## The Franchised Business

16.     On or about November 22, 2021, Paint Nail Bar entered into a Franchise Agreement with the Individual Defendants in connection with the operation of a Paint Nail Bar located in Houston, Texas (the "Franchise Agreement"). A copy of the Franchise Agreement is attached hereto as Exhibit A.

17.     Prior to November 22, 2021, the Individual Defendants had no connection with the nail salon industry, were not employed in the nail salon industry, and had not run a nail salon.

18.     Pursuant to the Franchise Agreement, the Individual Defendants intended to operate a Paint Nail Bar at 1223 W. 34th Street, Suite C-100, Houston, Texas 77018 (the "Franchised Business" or the "Salon").

19.     On November 22, 2021, the Individual Defendants formed ObiEnterprise for the purposes of operating the Salon, although there was never a formal assignment of the Franchise Agreement from the Individual Defendants to ObiEnterprise.

20.     Following execution of the Franchise Agreement, and as required by same, Paint Nail Bar provided sufficient and ample training to the Defendants, and their employees, including pre-opening training, post-opening training, and Paint Nail Bar conducted multiple national Franchise Summits attended by the Individual Defendants.

21.     In or about May 2022, ObiEnterprise entered into Retail Lease Agreement with non-party Alba 34th, L.P., an unaffiliated landlord in the State of Texas.

22.     The Salon commenced operations as a Paint Nail Bar in or about June 2023.

23.     Prior to this, in February 2023, ObiEnterprise filed an "Assumed Name" filing for "Paint Nail Bar Houston" with the State of Texas.

**The Franchise Agreement's In-Term and Post-Termination Obligations**

24.     The Franchise Agreement includes a number of important in-term and post-termination provisions, obligations, and prohibitions.

25.     For instance, the Franchise Agreement provides, in relevant part:

5.9    <u>Exclusive Relationship</u>.  We have granted the Franchise to you in consideration of and reliance upon your (and your Owners') agreement to deal exclusively with us. We would be unable to protect the Confidential Information against unauthorized use or disclosure or to encourage a free exchange of ideas and information among our franchisees if you (or your Owners) were permitted to hold interests in or perform services (other than you serving as an employed nail technician providing services directly to clients for a salon owned by others) for a nail salon or one or more similar facilities or businesses that offer the same or similar products and services customarily offered by PAINT Nail Bar® Salons, or an entity that grants franchises or licenses for any of these types of businesses, other than the Salon and other PAINT Nail Bar® Salons (a "**Competitive Business**").  You agree that, during the Term, neither you nor any of your Owners, directors, or officers (nor any of your or your Owners', directors', or officers' spouses) will:

　　(a)    have any direct or indirect interest as an owner whether of record, beneficially or otherwise perform or engage in services as a director, officer, manager, employee, consultant, representative, or agent for, a Competitive Business (this restriction is not applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent less than 3% of the number of shares of that class of securities issued and outstanding);

　　(b)    directly recruit or solicit for hire any of our employees or the employees of any PAINT Nail Bar® Salon without obtaining our or the employer's prior written permission (general advertising or solicitation directed to the public in general is not restricted;

　　(c)    direct any prospective or existing business or economic opportunities away from us, our affiliate, the Salon or any other PAINT Nail Bar® Salon to a Competitive Business; or

　　(d)    perform any act prejudicial or injurious to the goodwill associated with the Marks.

<u>See</u> Exhibit A at § 5.9.

26.    The Franchise Agreement further provides, with respect to post-termination obligations:

13.3    <u>Confidential Information</u>.  Upon termination or expiration of this Agreement, you and your Owners will immediately cease to use any of our Confidential Information in any business or otherwise and return to us all copies of the Manuals and any other confidential materials that we have loaned to you.

<u>See</u> Exhibit A at § 13.3.

27.    The Franchise Agreement also provides, with respect to post-termination obligations:

> 13.4 <u>Covenant Not to Compete</u>. Upon termination of this Agreement for any reason or expiration of this Agreement, you agree that, for 2 years beginning on the effective date of termination or expiration(subject to extension as provided below), neither you nor any of your Owners, will
>
> (a) have any direct or indirect, controlling or non-controlling interest as an owner whether of record, beneficial or otherwise in any Competitive Business which is located or operating at the Site or within a 5-mile radius of the Site, or any other PAINT Nail Bar® Salon; provided that this restriction will not be applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent less than 3% of the number of shares of that class of securities issued and outstanding, or
>
> (b) perform services as a director, officer, manager, employee, consultant, representative or agent for a Competitive Business which is located or operating at the Site or within a 5-mile radius of the Site.
>
> The time period during which these restrictions apply will be automatically extended, with respect to all persons that this Section covers, for each day during which any person covered by this Section is not complying fully with this Section. You acknowledge that you and your Owners possess skills and abilities of a general nature and have other opportunities for exploiting these skills. Consequently, our enforcing the covenants made in this Section will not deprive you or your Owners of personal goodwill or the ability to earn a living.

<u>See</u> Exhibit A at §13.4

## Defendants' Default and Breach of the Franchise Agreement, and the Termination of Same

28.     On July 16, 2025, Defendants – through counsel – sent a demand letter to Plaintiff, demanding that the Franchise Agreement be "rescinded in its entirety" on top of a demand of $950,000 in "damages incurred" (the "July 16 Letter").

29.     While Defendants sent the July 16 Letter, they notably avoided an important fact: they had previously tried to purchase an additional Paint Nail Bar Salon from a nearby franchisee. Such efforts are wildly inconsistent with the July 16 Letter and the demands set forth therein.

30.     In any event, before a response to the July 16 Letter could be sent to

Defendants (or their counsel),[1] Defendants began operating a competitive nail salon business in violation of their Franchise Agreement's in-term and post-termination non-competition provisions.

31.     Specifically, prior to sending the July 16 Letter, Defendants filed a new "Assumed Name" with the State of Texas. More specifically, on July 13, 2025, ObiEnterprise filed paperwork with the Texas Secretary of State to change its assumed name from "Paint Nail Bar Houston" to "The Polish Bar," as evidenced by the Secretary of State's website:



32.     This conduct, and these efforts, were concealed from Plaintiff.

33.     It was only on or about July 30, 2025 that Plaintiff became aware of Defendants' intent to violate their non-competition provisions.

34.     Specifically, Plaintiff's investigation revealed that, starting on or

---

[1]     Pursuant to a July 9, 2025 call, Defendants' counsel was aware that Plaintiff's counsel would be on vacation, out of the country, on July 16, 2025. And that counsel would not be returning for two-plus weeks. Notwithstanding such knowledge, Defendants chose to send the July 16 Letter on July 16, 2025, demanding a response within ten (10) days. Upon receipt of the July 16 Letter, Plaintiff's counsel advised Defendants' counsel that Plaintiff would not respond to the July 16 Letter within ten (10) days, and that a discussion between Plaintiff and Counsel would take place on or after July 28, 2025.

shortly before July 30, 2025, Defendants commenced operating a non-Paint Nail Bar nail salon under the name "The Polish Bar."

35.     This competitive nail salon **admittedly** uses the same system, training, staff, support, appearance, and way of doing business as the formerly-franchised Paint Nail Bar Salon. In Defendants' own words:



36.     While Defendants appear to have removed trademarks associated with the Paint Nail Bar Salon, they are operating an identical business – in direct contravention of their contractual obligations.

37.     Following confirmation of Defendants' violative conduct, Plaintiff (through counsel) issued a Notice of Termination to Defendants in light of their violations of the Franchise Agreement, amongst other relevant provisions. A copy of the Notice of Termination is attached hereto as <u>Exhibit B</u>.

38.     As set forth in the Notice of Termination, Defendants had (and have) a variety of post-termination obligations, including, but not limited to, those set forth in Section 13 of the Franchise Agreement.

39.     Upon the termination of the Franchise Agreement, Defendants failed

to return the Confidential Information described in Section 13.3 of the Franchise Agreement.

40. Notwithstanding the Notice of Termination, and notwithstanding their post-termination contractual obligations, as of the filing of this Complaint, Defendants continue to operate a Competitive Business (as defined in the Franchise Agreement).

41. Specifically, notwithstanding the termination of the Franchise Agreement, Defendants, jointly and severally have continued operating the formerly-franchised Paint Nail Bar salon using the Marks, and the Paint Nail Bar System (as defined in the Franchise Agreement), without Paint Nail Bar's authorization, as evidenced by photos taken on August 5, 2025:




 

42.     But Plaintiff's photos are superfluous, as Defendants are admittedly competing.

43.     Specifically, Defendants have used influencers (paid or otherwise) to promote their competitive The Polish Bar business. <u>See</u> http://bit.ly/4orXcLv (last visited August 7, 2025).

44.     In this promotional video by Courtney Zavala, which was co-posted with Defendants, Ms. Zavala writes about Defendants' competitive salon:



45.     In the post, Ms. Zavala notes that her nails were done by "CosmeticsbyMatte."

46.     In looking at the profile associated with CosmeticsbyMatte, it appears that they are also a former Paint Nail Bar Salon employee, as evidenced by their Instagram profile:



See http://bit.ly/4oq2cjP (last visited August 7, 2025).

47.     Defendants' brazen conduct goes beyond using (likely paid) influencers. For instance, just last week, Defendants posted on social media as follows:



See http://bit.ly/3UWe5QN (last visited August 7, 2025).

48.     In another post, Defendants blatantly attempt to take credit for work done by Paint Nail Bar, causing confusion:



<u>See</u> http://bit.ly/3UWe5QN (last visited August 7, 2025).

49.     Notably, while Defendants say that "The Polish Bar is the Place to Be!" the reviews contained in the social media post are for the formerly-franchised Paint Nail Bar. <u>Id</u>. ("I love Paint Nail bar" and "I love Paint Nail Bar Garden Oaks!!!", amongst other reviews cited by Defendants).

50.     Beyond their own social media, Defendants' flagrantly violative conduct is causing confusion on Google, where "The Polish Bar" is being conflated with Paint Nail Bar Salon (as evidenced by the lead review for The Polish Bar below):



See http://bit.ly/4leWvCs (last visited August 7, 2025) ("If I could, I'd give PAINT Nail Bar 10 stars!").

51.     Additionally, Defendants continue to use the same phone number for The Polish Bar as they used in their formerly-franchised Paint Nail Bar Salon.

52.     Beyond this, Defendants also using information gathered while they were Paint Nail Bar franchisees. Specifically, Defendants downloaded from Plaintiff's software platform (called Booker) and uploaded it to their new software platform (called Vagaro).

53.     Using this customer information (i.e., Confidential Information), Defendants are contacting the Paint Nail Bar's customers and seeking to solicit their business, in violation of the Franchise Agreement:



54.     It is clear that – other than removing the Paint Nail Bar name, The Polish Bar is identical to the formerly-franchised Paint Nail Bar Salon.

55.     In fact, in a recent social media post, Defendants posted photos of their The Polish Bar, which is identical to their formerly-franchised Paint Nail Bar:

**Paint Nail Bar**                          **The Polish Bar**

          

See http://bit.ly/4lktFAC          See also http://bit.ly/3HewKnY
(last visited August 7, 2025)          (last visited August 7, 2025).

56.     Other than the customers in the photo, the two salons are identical.

57.     Because Paint Nail Bar validly terminated the Franchise Agreement due to Defendants' non-curable defaults, Defendants are required to abide by the post-termination obligations of the Franchise Agreement, including the non-competition obligation.

58.     As of the date of this filing, Defendants are intending to continue operating (and continue to operate) the formerly-franchised nail salon, using the Marks and System, in violation of the post-termination obligations, as evidenced above.

59. Defendants' failure to abide by the post-termination obligations required under the Franchise Agreement, and continued use the same technicians, training, and System, in connection with the operation of a salon at the site of the formerly-franchised nail salon has caused, and is continuing to cause, irreparable harm.

60. Pursuant to Section 15.4 of the Franchise Agreement, and the Defend Trade Secrets Act, Plaintiff is entitled to recover, as the prevailing party, its costs and expenses, including legal fees and expenses, in connection therewith, against Defendants.

61. Defendants have not voluntarily ceased their unlawful acts, thus necessitating the present lawsuit.

**COUNT I:**
**BREACH OF CONTRACT**
**(Post-Termination Provisions – Injunctive Relief)**
**(against the Individual Defendants)**

62. Plaintiff realleges and incorporates by reference Paragraphs 1 through 61 hereof.

63. The Franchise Agreement is a valid contract executed by Paint Nail Bar and the Individual Defendants.

64. The Individual Defendants breached the Franchise Agreement by continuing to use the Paint Nail Bar System following termination of the Franchise Agreement.

65. The Individual Defendants breached the Franchise Agreement by continuing to operate a nail salon at the site of the formerly-franchised Paint Nail Bar nail salon, in violation of the covenants contained in the Franchise Agreement.

66. As a result of the Franchisee Defendants' willful and intentional actions, the Franchisee Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm and injury to Paint Nail Bar.

67. It is vitally important to Plaintiff's franchise system, and Plaintiff's other franchisees, that the Court enforce post-termination restrictive covenants and obligations in the Franchise Agreement, which expressly prohibit Defendants from operating their competing nail salon using Plaintiff's Confidential Information (as defined in the Franchise Agreement).

68. Plaintiff has no means of enforcing the post-termination covenants and obligations in the Franchise Agreement – and remedying the irreparable harm that Plaintiff has suffered, and continues to suffer – other than to seek injunctive relief from this Court.

69. Attorneys' fees and cost are permitted under the Franchise Agreement.

## COUNT II:
## DEFEND TRADE SECRETS ACT
### (against All Defendants)

70.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 61 hereof.

71.     The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

72.     Plaintiff owns numerous trade secrets, including, but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and phone number, related to products, proprietary contracts and contacts, and services used in interstate commerce.

73.     Each of Plaintiff's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person, who can obtain economic value from the disclosure or use of the information.

74.     Plaintiff's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees associated with Plaintiff.

75.     During the time period described above, Plaintiff's trade secrets were disclosed to Defendants for the sole purpose of expanding the Paint Nail Bar franchise system.

76. Plaintiff has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining their competitive advantage in the marketplace.

77. The aforementioned agreements explicitly provide for the protection of such trade secrets, as set forth herein, including requiring the return of all originals and copies of the confidential Operations Manual, and files and records to Plaintiff upon expiration, termination, or nonrenewal of the Franchise Agreement; requiring former franchisees and their representatives to maintain the confidentiality of the information; and requiring former franchisees and their representatives to never use the information for any purpose other than operating a franchised business pursuant to the Franchise Agreement.

78. Plaintiff, and Defendants agreed, that upon expiration, termination, or nonrenewal of the agreements they would never use, disclose, or permit the use or disclosure of Plaintiff's trade secrets in any manner whatsoever.

79. Without authority or consent from Plaintiff, Defendants are using the business know-how, phone numbers, and customer contact information that they obtained while operating an improperly-competitive business for themselves, thereby misappropriating Plaintiff's trade secrets.

80. Upon information and belief, Defendants used and are utilizing Plaintiff's confidential system and materials after the improper termination of the

Franchise Agreement, and Plaintiff has not (and would not) consent to or authorized such use.

81.     Defendants intentionally, and without Plaintiff's permission or authorization, misappropriated and/or disclosed Plaintiff's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Plaintiff by, for example, causing Plaintiff to lose any customers successfully solicited by Defendants.

82.     As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Plaintiff's trade secrets, Plaintiff has suffered and will continue to suffer irreparable injury.

83.     Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Plaintiff's trade secrets should be enjoined from further disclosure or use of Plaintiff's trade secrets.

84.     Defendants' conduct in misappropriating Plaintiff's trade secrets was, and continues to be, willful and malicious, warranting an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## PRAYER[2]

WHEREFORE, Plaintiff requests judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A.     The entry of a temporary, preliminary, and permanent injunction prohibiting Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concern with them, from:

i.     Operating a competing nail salon in Defendants' former Paint Nail Bar franchise location or within 5 miles thereof, for a period of two years from August 7, 2025, and extending such period for the amount of time during which Defendants are willfully violating their covenants;

ii.     Maintaining, using, or disclosing the Operations Manual; and

iii.     Assisting, aiding, or abetting another person or business entity in engaging in or performing any of the activities enumerated above.

---

[2]     Pursuant to Section 15.6 of the Franchise Agreement, Plaintiff intends to file an Arbitration claim against Defendants for damages sustained (other than legal fees pursuant to Section 15.4 of the Franchise Agreement and/or the Defend Trade Secrets Act,). Thus, Plaintiff does not intend to waive its right to damages sustained by not raising same here but, rather, will file such claim before the American Arbitration Association. Rather, because of the relief sought, the claims brought herein are exempt from the Franchise Agreement's arbitration clause.

B.     The entry of a temporary, preliminary, and permanent injunction ordering Defendants to return all Manuals and Confidential Information to Plaintiff;

C.     Awarding reasonable attorneys' fees and costs pursuant to Section 15.4 of the Franchise Agreement and/or the Defend Trade Secrets Act,

F.     Awarding interest as allowed by law, and

G.     Awarding such other and further relief as the Court deems just and proper.

<u>**DESIGNATION OF TRIAL COUNSEL**</u>

Plaintiff will be represented at trial by Matthew Margolis and Evan M. Goldman.

Dated: August 7, 2025                    Respectfully Submitted,

By:   *Matthew Margolis*
       _____
       Matthew Margolis (FL Bar: 1002501)
       MARGOLIS PLLC
       700 Rosemary Avenue, #204
       West Palm Beach, Florida 33401
       Tel: 561-203-9643
       Email: matthew@margolispllc.com

       Evan M. Goldman (*Pro Hac Vice* forthcoming)
       THE FRANCHISE FIRM LLP
       225 Wilmington West Chester Pike, Suite 200
       Chadds Ford, Pennsylvania 19317
       Tel: 215-965-1553
       Email: evan@thefranchisefirm.com

       *Attorneys for Plaintiff,*

## VERIFICATION

Mark Schlossberg, being duly sworn, deposes and says:

I am Chief Executive Officer of Plaintiff. I have read the foregoing Verified Complaint and know the contents thereof, and state that the allegations are true and correct. I based this verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true and correct. The grounds of any knowledge, information, and belief, are derived from my position as Chief Executive Officer, any personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, within limitation, my review of Plaintiff's records and conversations with Plaintiff's employees.

DocuSigned by:

*Mark Schlossberg*

FDF60784D9... **Mark Schlossberg**