

EVAN M. GOLDMAN, ESQ.
FOUNDING PARTNER
THE FRANCHISE FIRM LLP
225 WILMINGTON WEST CHESTER PIKE, SUITE 200
CHADDS FORD, PENNSYLVANIA 19317
EVAN@THEFRANCHISEFIRM.COM
215.964.1553
THEFRANCHISEFIRM.COM

August 1, 2025

*VIA ELECTRONIC MAIL AND FEDERAL EXPRESS*
Zarco Einhorn Salkowski, P.A.
Attention: Robert M. Einhorn
Attention: Taylor N. Drucker
2 S. Biscayne Blvd., 34th Floor
Miami, Florida 33131
Email: reinhorn@zarcolaw.com
Email: tduncker@zarcolaw.com

      Re:    **Notice of Termination of Franchise Agreement**

Dear Mr. Einhorn and Ms. Drucker,[1]

As you know, the undersigned and The Franchise Firm LLP represent Paint Nail Bar Franchise Company, LLC ("Franchisor", "PNB", "we", "us", or "our"). The purpose of this letter (the "Notice") is to inform Kenny Eric Eddleman and Andrea M. Eddleman (collectively, "Franchisee, "you", and "your") that Franchisee is in material default of Franchisee's Franchise Agreement, dated November 22, 2021 (the "Franchise Agreement"), and that the Franchise Agreement is hereby terminated in light of Franchisee's non-curable defaults listed herein. Capitalized terms used but not defined herein has the meaning ascribed to such term by the Franchise Agreement.

**Franchisee's Default under the Franchise Agreements**

Franchisee is currently in default of the following provisions of the Franchise Agreement:

- Section 3.4 – under Section 3.4 of the Franchise Agreement, you are required to "use the consultant we designate for this purpose and we may change it from time to time." Notwithstanding this provision, you posted to Social Media, multiple, using an unapproved vendor (or no vendor at all), as evidenced here:

---

[1] Because you represent the Franchisee at issue here, sending this Notice to you, as counsel, satisfies the Notice requirements under Section 15.12 of the Franchise Agreement. If you contend that we should send a copy of the Notice directly to Kenny Eric Eddleman and Andrea M. Eddleman, individually, in order to constitute effective notice, please advise within 24 hours of your receipt of this Notice, and we will send a separate copy directly to them.






- <u>Section 5.3</u> – Section 5.3 of the Franchise Agreement provides, in relevant part:

    You must use the Marks (and only the Marks) as the sole identification
    of the Salon at the Site, and only in the manner we prescribe . . .

THE FRANCHISE FIRM

2

As evidenced by the images above, Franchisee's attempts to disassociate the Site from the PNB Marks and rebrand as "The Polish Bar" (while boasting of having the "same team, new name, better experience") is an express violation of the Franchise Agreement.

- <u>Section 6.2</u> – Section 6.2 of the Franchise Agreement provides, in relevant part:

    > You alone are responsible for operating the Salon in full compliance with all applicable laws, ordinances and regulations (including, without limitation, bonding and licensing requirements) and agree to comply with all System Standards, as we may periodically modify them, as if they were part of this Agreement. You will not offer, sell, or provide at or from the Salon any goods or services not authorized in the Manuals. You must offer, sell, and furnish all those goods and services we prescribe from time to time.
    >
    > > System Standards may regulate any aspect of the Salon's development, operation and maintenance. Without limiting the generality of the foregoing, System Standards may regulate any one or more of the following:
    > >
    > > > (j) standards and procedures for your or your employees' and other representatives' authorization to use and use of blogs, common social networks like Face Book and MySpace, professional networks like LinkedIn, live-blogging tools like Twitter, virtual worlds, file, audio and video sharing sites and other similar social networking media and tools ("Social Media") that in any way references the Marks or involves the Salon . . .
    > > >
    > > > (k) use and display of the Marks, usage of the Salon and required signage and postings . . .

Again, notwithstanding this provision, you posted to Social Media – multiple times – using an unapproved vendor (or no vendor at all), as evidenced above. You also altered Social Media accounts affiliated with the Site. This is an express violation of the Franchise Agreement. Further, your use of unapproved marks in those same posts is also an express violation of the Franchise Agreement.

- <u>Section 6.5</u> – Section 6.5 of the Franchise Agreement provides, in relevant part:

    > You must purchase or lease all Operating Assets and other products and services that you use or sell at the Salon only according to our System Standards and, if we require, only from suppliers or distributors that we designate or approve . . .

Franchisor's System Standards require its franchisees to utilize Booker.com for arranging appointments with customers. However, an investigation by Franchisor has revealed that you are using an unapproved platform, Vagaro.com, instead:



Your failure to use the platforms mandated by the System Standards and your use of an unapproved platform is an express violation of the Franchise Agreement.

**No Opportunity to Cure**

Pursuant to Section 12.2(i) of the Franchise Agreement, Franchisee is not afforded any cure period for defaults committed in furtherance of operating a competing business. "The Polish Bar" qualifies as such a competing business and, consequently, **this Notice serves to terminate the Franchise Agreement, effective immediately**. See Franchise Agreement, at § 12.2(i).

**Franchisee's Post-Termination Obligations under the Franchise Agreement**

Franchisee's post-termination rights and obligations are set forth in Section 13 of the Franchise Agreement. Franchisee's immediate attention to those provisions is required and, Franchisor intends to fully enforce any and all post-termination covenants contained in the Franchise Agreement, subject to applicable law. Specifically, Franchisee must (among other things):

- Immediately cease to operate the Site and identify as an affiliate of Franchisor. See Section 13.2;

- Immediately take such action as required to cancel all or fictitious assumed name(s) or equivalent registrations relating to your use of the Marks. See Section 13.2(a);

- Promptly pay all sums owing to Franchisor and its affiliates, as well as all damages, costs and expenses, reasonable attorneys' fees incurred by Franchisor as a result of Franchisee's defaults and, if applicable, incurred by Franchisor in obtaining injunctive relief should Franchisee fail to adhere to its post-termination obligations. <u>See</u> Section 13.1;

- Immediately deliver to Franchisor the Manual and all records, files, instructions, correspondence, invoices, agreements, all confidential, proprietary and copyrighted material and all other materials related to the operation of the Site, including but not limited to client lists and records, while also deleting any electronic or other copies of any of the foregoing. <u>See</u> Section 13.3;

- Comply with the non-competition covenants contained in Section 13.4 of the Franchise Agreement. <u>See</u> Section 13.4. More specifically, pursuant to Section 13.4 of the Franchise Agreement, Franchisee agreed that, upon termination, it will not:

    (a) have any direct or indirect, controlling or non-controlling interest as an owner whether of record, beneficial or otherwise in any Competitive Business which is located or operating at the Site or within a 5-mile radius of the Site, or any other PAINT Nail Bar® Salon; provided that this restriction will not be applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent less than 3% of the number of shares of that class of securities issued and outstanding, or

    (b) perform services as a director, officer, manager, employee, consultant, representative or agent for a Competitive Business which is located or operating at the Site or within a 5- mile radius of the Site.

<u>See</u> Section 13.4; and

Beyond this, Franchisor has the right to purchase certain assets of the Franchisee, pursuant to Section 13.5 of the Franchise Agreement. While Franchisor has not determined whether it intends to exercise its right under Section 13.5 of the Franchise Agreement, Franchisee is hereby demanded to provide a list of all furnishings, equipment, signs, fixtures, advertising materials, supplies, and inventory of Franchisee related to the operation of the Franchised Business. <u>See</u> Section 13.5.

**<u>Demand for Preservation of Documents</u>**

This Notice further demands that Franchisee take any and all steps necessary to preserve all evidence that may be relevant, or in any way related, to the parties' disputes, the material defaults set forth in this Notice, and Franchisee's operations under the Franchise Agreement. Franchisee must immediately take all steps necessary to prevent the destruction, loss, concealment, or alteration of any paper, document, or electronically stored information and other data or information generated by and/or stored by Franchisee. This includes e-mail messages, text messages, and instant messages related to the matters addressed in this Notice, as well as all material that constitutes, refers or relates to the social media accounts described above.

**Franchisor's Reservation of Rights**

This Notice does not modify, replace, or affect any provision of the Franchise Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding your location. We also reserve the right to take any interim steps permitted under the Franchise Agreement because of your default.

Should You have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

**THE FRANCHISE FIRM LLP**

**Evan M. Goldman, Founding Partner**

cc: Paint Nail Bar Franchise Company, LLC (via electronic mail)