UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:25-cv-2113

PAINT NAIL BAR FRANCHISE
COMPANY, LLC, a Florida limited
liability company,

    Plaintiff,
v.

OBIENTERPRISE, LLC, a Texas
limited liability company, KENNY
ERIC EDDLEMAN, an individual,
ANDREA M. EDDLEMAN, an
individual,

    Defendants.
_____/

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants, OBIENTERPRISE, LLC, ERIC EDDLEMAN, and ANDREA M. EDDLEMAN (collectively "Defendants") by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(B)(6) and M.D. Fla. Local Rule 3.01, hereby file this Motion to Dismiss Plaintiff, PAINT NAIL BAR FRANCHISE COMPANY, LLC's Amended Verified Complaint [ECF No. 33] and, in support thereof state as follows:

### INTRODUCTION

This action stems from Plaintiff's void and illegal franchise sale to Defendants, which purportedly granted Defendants the right to develop and

1

operate a Paint Nail Bar ("PNB") salon in Houston, Texas. In July 2025, Defendants informed Plaintiff that they were rescinding the franchise transaction due to its fraudulent nature and demanded the return of their initial investment and related losses in exchange for Plaintiff taking over the franchised business. Plaintiff refused to take over the business and instead filed this lawsuit seeking to shut down Defendants' wholly independent business.

Plaintiff filed its original Complaint on August 7, 2025. [ECF No. 1]. On September 9, 2025, Defendants filed a Motion to Dismiss. [ECF No. 23]. In lieu of responding, Plaintiff filed its Amended Verified Complaint on September 30, 2025. [ECF No. 33]. However, Plaintiff's amendments amount to little more than cosmetic changes and do not cure the original pleading's fatal defects. Specifically, the Amended Complaint's Defend Trade Secrets Act claim relies on nothing more than conclusory allegations of general categories of trade secrets without identifying any specific "secret," explaining how it provides a competitive advantage, or showing that it derives independent economic value from its secrecy. Plaintiff's breach of contract claim suffers from similar deficiencies, as it does not plead any legitimate business interest that would justify enforcing the restrictive covenant at issue. Further, Defendants have and are pursuing an adequate remedy at law through arbitration, which defeats any claim of irreparable harm and bars Plaintiff's request for injunctive relief.

## MEMORANDUM OF LAW

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff give notice of its claim by including in the complaint a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2); *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512 (2002). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court held that in order to survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. To do so, a plaintiff must do more than provide labels and conclusions or a formulaic recitation of the elements of a cause of action. *Id.* at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When reviewing a motion to dismiss for failure to state a claim, the court must accept as true "well-pleaded facts and reasonable inferences drawn from those facts [and] . . . [u]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) "A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted deductions or facts or legal conclusions masquerading as facts." *Sarver v. Jackson*, 344 Fed.Appx. 526, 527 n.2 (11th Cir. 2009). In deciding a motion to dismiss, a court limits its consideration to the pleadings and exhibits attached thereto. *Grossman*

3

*v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citation omitted). As discussed in the following sections, Plaintiff's conclusory allegations fall well short of the initial pleading threshold and fail to state a cause of action warranting dismissal.

B. **Plaintiff Fails to State a Claim under the Defend Trade Secrets Act.**

The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. 1836(b)(1), created a private civil cause of action for trade secret misappropriation in which "[a]n owner of a trade secret that is misappropriated may bring a civil action … if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." Defend Trade Secrets Act of 2016, S. 1890, 114th Cong. § 2 (2016). The DTSA authorizes courts to grant injunctions in the event of "actual or threatened misappropriation" of trade secrets. *Hayes Healthcare Servs. LLC v. Meacham*, No. 19-CV-60112-COHN, 2019 WL 2637053, at *3 (S.D. Fla. Feb. 1, 2019). "The party claiming trade secret protection has the burden to show how the information qualifies as a trade secret." *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV, 2017 WL 532299, at *3 (S.D. Fla. Feb. 9,

4

2017) (citing *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012)).

A "trade secret" is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information," provided that:

(A) The owner thereof has taken reasonable measures to keep such information secret; and
(B) The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

A plaintiff bringing a claim under the DTSA must allege facts showing (i) "possessed information of independent economic value" that (a) "was lawfully owned by" the plaintiff and (b) for which the plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or disclosed that information," despite (iii) "a duty to maintain its secrecy." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F.Supp.3d 1285, 1293 (M.D. Fla. 2018) (citing *Primo Broodstock, Inc. v. Am. Mariculture, Inc.*, 2017 WL 1502714, at *11 (M.D. Fla. Apr. 27, 2017) and *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)).

Here, Plaintiff's DTSA claim fails because it does not allege facts supporting the essential element of "misappropriation," nor does it describe the purported trade secrets with reasonable particularity sufficient to place Defendants on notice of what was allegedly misappropriated. Plaintiff also fails to

5

plead facts showing that the alleged trade secrets relate to interstate or foreign commerce and therefore has not established this Court's original jurisdiction under the DTSA.

### i. Plaintiff Fails to Adequately Define its Purported "Trade Secrets."

A party seeking an injunction based on the misappropriation of trade secrets must describe the trade secrets with sufficient particularity. *See ProV Int'l Inc. v. Lucca*, 2019 WL 5578880, at * 3 (M.D. Fla. Oct. 29, 2019). In addition, the movant must show "both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998).

Here, Plaintiff fails to meet either requirement. Rather than identifying any specific trade secret, Plaintiff merely provides a conclusory list of broad, generic categories—asserting ownership of "proprietary aspects of its Operations Manual," including "client acquisition," "service sequencing," and "salon design standards"; "franchisee-only training manuals" and "national conference-based training modules"; "proprietary marketing strategies and campaigns"; a "unique phone number"; "vendor programs"; and "customer lists and contact information." [ECF No. 33 ¶ 78].

Such catch-all references are insufficient as a matter of law because they fail to describe the alleged trade secrets with the reasonable particularity required to distinguish them from ordinary business information. Courts consistently

reject allegations that merely recite categories of materials or business concepts without identifying what is secret about them. *See ProV Int'l Inc. v. Lucca*, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (finding the assertion that defendants misappropriated "proprietary practices" and "operating procedures" insufficient to demonstrate the existence of a trade secret); *Gould & Lamb, LLC v. D'Alusio*, 949 So. 2d 1212, 1214 (Fla. 2d DCA 2007) (holding that descriptions such as "marketing plans, product plans, business strategies, financial information, forecasts, and the like" were too general to constitute trade secrets); *Wouaff Wouaff LLC v. McElroy*, 2018 WL 6620601, at *4 (M.D. Fla. Nov. 1, 2018) (dismissing DTSA claim where plaintiff alleged general categories such as "customer lists," "customer needs and preferences," "methods," "techniques," and "processes").

Plaintiff's Complaint is devoid of any factual allegations showing that the purported trade secrets derive independent economic value from not being generally known. *See* [ECF No. 33, ¶ 73]. Plaintiff does not explain how its "client acquisition," "manuals," "modules," "marketing strategies," "phone number," or "vendor programs" provide a competitive edge, are unavailable to others in the industry, or could not be readily duplicated through publicly available means. *See Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) ("Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection."). Plaintiff conclusory alleges that these purported trade secrets derive economic value by "enabling consistent brand

7

identity, targeted marketing, and competitive vendor pricing" [ECF No. 33, ¶ 73], but even accepting this allegation as true, it is legally insufficient. The marketing strategies, basic salon design elements, phone numbers, and vendor programs, for example, are standard, widely used, and readily observable practices in the nail salon industry. They are neither unique nor secret, and any claimed economic value arises from ordinary business operations that competitors could easily replicate or observe. *See Am. Red Cross*, 143 F.3d at 1410. Because Plaintiff fails to allege facts showing that these materials confer a concrete and independent economic advantage from secrecy, its DTSA claim fails as a matter of law. *See, e.g., Let Us Claim Consultants Ins., Inc. v. Cepeda*, No. 6:23-CV-2378-PGB-EJK, 2024 WL 3650673, at *11 (M.D. Fla. Aug. 5, 2024) (dismissing DTSA claim where the complaint lacked factual allegations showing that the alleged trade secrets derived independent economic value from not being generally known).[1]

To the extent Plaintiff alleges that Defendants misappropriated "customer lists and contact information," the claim still fails. *See* [ECF No. 33, ¶ 78]. A bare reference to "customer lists and contact information" does not "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in

---

[1] In a separate but related case, an affidavit submitted by a former PNB nail technician confirmed that PNB follows essentially the same procedures as its main competitor, Frenchie's, further demonstrating that the so-called "trade secrets" are routine industry practices rather than protectable confidential information. *See* Def.'s Opp'n to Mot. for Prelim. Inj., ECF No. 18-3, *Paint Nail Bar Franchise Co., LLC v. Paint Tampa, LLC, et al.,* No. 8:25-cv-2580 (M.D. Fla.).

8

the trade." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018). Plaintiff does not specify whether it is referring to names, email addresses, or phone numbers, nor does it allege that such information is not publicly available or even proprietary to Plaintiff. *See McGriff Seibels & Williams, Inc. v. Sparks*, 2020 WL 5809971, at *n.4 (N.D. Ala. Jan. 23, 2020) ("A client's email address or telephone number is not [plaintiff's] trade secret as defined in the DTSA."). Without particularized allegations showing how this information is secret and economically valuable by virtue of that secrecy, Plaintiff's DTSA claim cannot stand. *See Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

Put simply, Plaintiff cannot transform ordinary, routine nail salon operations—manuals, training programs, and marketing programs, used by virtually every competitor in the industry—into trade secrets merely by labeling them as such; without factual allegations showing uniqueness, secrecy, and economic value, the DTSA claim is implausible on its face and must be dismissed.

### ii. Plaintiff Fails to Allege that Defendants Misappropriated its Purported "Trade Secrets."

Additionally, Plaintiff does not allege any facts that plausibly support that Defendants misappropriated by improper means any trade secrets. The DTSA defines "misappropriation" as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without

9

express or implied consent ....” 18 U.S.C. §§ 1839(5)(A)–(B). Instead, Plaintiff wholly relies on conclusory statements and buzzwords to substantiate its assertions.

Specifically, Plaintiff claims that "Defendants are using the business know-how, phone numbers, and customer contact information that they obtained while operating an improperly-competitive business for themselves, thereby misappropriating Plaintiff's trade secrets." [ECF No. 33 ¶ 84]. Plaintiff further alleges, *"[u]pon information and belief,* Defendants misappropriated Plaintiff's trade secrets by: (a) transferring Plaintiff's Booker database into Vagaro and using it to solicit Paint Nail Bar customers; (b) continuing to use Plaintiff's phone number to capture customer calls; (c) employing Paint Nail Bar-trained technicians and training materials in their new salon; and (d) rebranding the identical salon as The Polish Bar while relying on Plaintiff's confidential systems and goodwill." *Id*. ¶ 85. Plaintiff then concludes, without any facts to substantiate its conclusion, "Defendants intentionally, and without Plaintiff's permission or authorization, misappropriated and/or disclosed Plaintiff's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Plaintiff…" *Id*. ¶ 86.

Fatal to Plaintiff's claim is that it relies solely on conclusory allegations and "information and belief" statements, without any factual support showing that Defendants actually acquired, disclosed, or used any trade secret through improper means. Mere assertions that Defendants transferred data from one

10

platform to another, employed trained technicians, continued using the same phone number, or rebranded their salon do not establish misappropriation under the DTSA—particularly where the information at issue is neither unique nor secret, as discussed above. *See M5 Mgmt. Servs., Inc. v. Yanac*, 428 F. Supp. 3d 1282, 1289 (N.D. Ala. 2019) (explaining that a defendant having access to confidential information and operating a business does not create a presumption that he is using such information).

Here, the Complaint contains no factual allegation to support the notion that Defendants are actually using anything from Plaintiff's Operations Manual, training manuals, or marketing strategies. Plaintiff fails to specify what information was allegedly misappropriated, how it was improperly acquired, or in what manner it was used. Conclusory allegations of misappropriation, without concrete supporting facts, are insufficient to state a plausible claim under the DTSA and require dismissal. *See Source One Fin. Servs., LLC v. Corpodian*, 2024 WL 4441804, at *3 (S.D. Fla. Oct. 8, 2024) (dismissing trade secret claim where plaintiff failed to allege when, how, or in what manner the defendant used or disclosed the alleged trade secrets and emphasizing that mere possession of trade secrets is insufficient to state a claim).

C. **Plaintiff's Failure to State a Cause of Action Under DTSA Divests this Court of Jurisdiction Over the State Law Breach of Contract Claim.**

Federal jurisdiction in this case is premised solely on original jurisdiction pursuant to Plaintiff's DTSA claim. *See* [ECF No. 33, ¶ 1] (alleging original federal

11

jurisdiction). Plaintiff further alleges that that this Court has supplemental jurisdiction over the state law breach of contract claim "under 18 U.S.C. § 1836(b)(1), because those claims are so related to the claims brought under the DTSA that they form a part of the same case or controversy." *Id.* ¶ 2. But where, as here, Plaintiff fails to state a cause of action under DTSA, then this Court is divested of original jurisdiction over the case and cannot exercise supplemental jurisdiction over the remaining state law claim. *See Wouaff Wouaff LLC v. McElroy*, No. 618CV418ORL41TBS, 2018 WL 6620601, at *3 (M.D. Fla. Nov. 1, 2018); *see also Fuller v. Alabama Dep't of Transp. by & through the Dir. of Alabama Dep't of Transp.*, 2017 WL 3722553, at *2 (N.D. Ala. Aug. 29, 2017) ("[H]aving dismissed all claims over which it has original jurisdiction, and given the stage of the proceedings, the Court declines to exercise supplemental jurisdiction over the remaining state law claim[.]").

### D. **Plaintiff Fails to State a Claim for Breach of Contract.**

Even if this Court exercises jurisdiction over the breach of contract claim, the claim still fails. The elements of a breach of contract claim are (1) the existence of a contract; (2) a breach of the contract; and (3) causation of damages as a result of the breach. *See Synergy Contracting Grp., Inc. v. Fednat Ins. Co.*, 332 So. 3d 62, 65 (Fla. 2d DCA 2021). Plaintiff alleges that Defendants violated certain post-termination covenants contained in the Franchise Agreement. *See* [ECF No. 33, ¶¶ 66–75]. Under § 542.335, Fla. Stat., the party seeking to enforce a restrictive covenant must both plead and prove, among other things, the

existence of one or more legitimate business interests that justify the restrictive covenant and that the restraint is reasonably necessary to protect these legitimate business interests.

Here, Plaintiff has not pled any specific facts demonstrating the existence of legitimate business interests that could justify enforcement of the restrictive covenant, nor has it alleged that the particular restraint at issue here is reasonably necessary to protect any such interests. *See generally* [ECF No. 33]. For instance, although Plaintiff conclusory lists a number of alleged "business interests," it offers no explanation of how this information is unique, confidential, or economically valuable, or how Defendants' use would create unfair competition. *See IDMWORKS, LLC v. Pophaly*, 192 F. Supp. 3d 1335, 1340 (S.D. Fla. 2016) ("A legitimate business interest must represent an investment by the employer and must enable unfair competition if misappropriated."); *see also Gould & Lamb, LLC*, 949 So. 2d at 1214 (employer's broad statements of concern to protect "marketing plans, product plans, business strategies, financial information, forecasts, and the like" insufficient to establish legitimate business interest).

Similarly, Plaintiff asserts that "[e]nforcement is essential to prevent further diversion of customers and harm to Plaintiff's franchise network." [ECF No. 33, ¶ 71]. However, Plaintiff fails to allege any factual support for this claim—there are no specific allegations that Defendants actually diverted customers, misused confidential information, or otherwise caused harm to the franchise

13

network. Conclusory statements about potential harm or vague references to customer diversion are insufficient to state a plausible claim or establish a legitimate business interest necessary to enforce the restrictive covenant. Without particularized factual allegations connecting the restraint to the protection of a concrete, confidential, or economically valuable interest, Plaintiff's claim fails as a matter of law and should be dismissed. *See* Fla. Stat. § 542.335(1)(b) ("Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable."); *see also White v. Mederi Caretenders Visiting Services of Se. Florida, LLC*, 226 So. 3d 774, 785 (Fla. 2017) ("Section 542.335 does not protect covenants whose sole purpose is to prevent competition *per se* because those contracts are void against public policy.").

E. **Plaintiff Is Not Entitled to Injunctive Relief.**

To obtain injunctive relief, Plaintiff must demonstrate all of the following factors: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). A preliminary injunction is "an extraordinary and drastic remedy." *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). Therefore, Plaintiff must "clearly establish" its burden of persuasion as to each of the four prerequisites. *Id.*

### i. Plaintiff Fails to Allege Irreparable Harm.

Here, Plaintiff has merely alleged "irreparable harm and injury." [ECF No. 33, ¶ 63, 72]. However, Plaintiff failed to allege any supporting facts or evidence to support its position. The bare bone allegations pled in the Complaint are simply insufficient to withstand dismissal. *See also Roberts v. State of Ala. Dept. of Youth Servs.*, 2013 WL 4046383, at *2 (M.D. Ala. Aug. 9, 2013) ("[G]eneralizations, conclusory allegations, blanket statements, and implications will not" allow the complaint to survive a motion to dismiss). Because Plaintiff has not pled any facts showing irreparable harm, its request for injunctive relief fails as a matter of law, and the Complaint must be dismissed.

### ii. Plaintiff Has and Is Pursuing an Adequate Remedy at Law.

Additionally, "[i]rreparable injury will never be found … If money damages are available as a remedy." *See Yachting Promotions, Inc. v. Broward Yachts, Inc.*, 792 So. 2d 660, 663 (Fla. 4th DCA 2001); *see also Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994) ("It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity."). Here, Plaintiff unquestionably has an adequate remedy at law, as they are pursuing monetary damages through arbitration. This is not hypothetical: Plaintiff has filed a Demand for Arbitration, initiating arbitration proceedings against Defendants. *See* Demand for Arbitration, attached hereto as

15

**Exhibit A**. Accordingly, because Plaintiff has an adequate legal remedy and cannot demonstrate irreparable harm, its request for injunctive relief fails as a matter of law and should be dismissed.

### F.     The Complaint Should be Dismissed with Prejudice.

Because Plaintiff seeks only injunctive relief while simultaneously pursuing an adequate remedy at law through arbitration, it cannot, as a matter of law, demonstrate entitlement to injunctive relief. Given that the Complaint relies solely on such claims, and no amendment could remedy this fundamental defect, the Court should dismiss the Complaint with prejudice.

### CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court enter an Order: (i) dismissing Plaintiff's Complaint in its entirety; (ii) granting Defendants their reasonable attorneys' fees and costs incurred in defending against the action; and (iii) such other and further relief as this Court deems just and proper.

Dated: October 14, 2025

Respectfully submitted,
**ZARCO EINHORN SALKOWSKI, P.A.**
*Counsel for Defendant*
One Biscayne Tower
2 S. Biscayne Blvd.
34th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Facsimile: (305) 374-5428

By: /s/ *Robert M. Einhorn*
**ROBERT M. EINHORN**

        Florida Bar No. 858188
        E-mail: reinhorn@zarcolaw.com
        E-mail: imorfi@zarcolaw.com
        **TAYLOR N. DUNCKER**
        Florida Bar No. 1064930
        E-mail: tduncker@zarcolaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 14, 2025, a true and correct copy of the foregoing document was electronically served via CM/ECF upon the following: Matthew Margolis, Esq. [matthew@margolispllc.com], Evan Goldman, Esq. [evan@thefranchisefirm.com].

        */s/ Robert M. Einhorn*
        **Robert M. Einhorn**

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), the undersigned certifies that she conferred with Plaintiff's counsel, Evan Goldman, via e-mail. Plaintiff's counsel has advised that Plaintiff opposes the relief requested herein.

        */s/ Taylor Duncker*
        **Taylor Duncker**